MELTZER, LIPPE, GOLDSTEIN
& BREITSTONE, LLP
190 Willis Avenue
Mineola, New York 11501
(516) 747-0300 (telephone)
Thomas J. McGowan, Esq.
*Attorneys for 226 East Montauk Highway Corporation*

Hearing Date:    **April 19, 2017, 2:30 p.m.**
Objections Due: **April 12, 2017, 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
         :

In re:                         :

           :

        **TANJU NUREL,**         :   **Chapter 11**

           :

            Debtor.    :   **Case No.:  8-17-71200 (ast)**

           :

           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**NOTICE OF MOTION FOR AN ORDER GRANTING RELIEF**
**FROM THE AUTOMATIC STAY AND RELATED RELIEF**

    **PLEASE TAKE NOTICE**, that on **April 19, 2017 at 2:30 p.m.** or as soon thereafter as counsel may be heard, a hearing ("**Hearing**") will be held before the Honorable Alan S. Trust, United States Bankruptcy Judge, at United States Bankruptcy Court, Eastern District of New York, 290 Federal Plaza Room 960, Central Islip, New York 11722, ("**Bankruptcy Court**"), upon the motion ("**Motion**") of 226 East Montauk Highway Corporation ("**Movant**" or "**Landlord**"), by its attorneys, Meltzer, Lippe, Goldstein & Breitstone, LLP, together with the Affidavit of Thomas J. McGowan, Esq. in Support of the Motion, sworn to March 28, 2017 for the entry of an Order, pursuant to sections 362 and 105 of title 11 of the United States Code ("**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"),

    (a) granting relief from and terminating the automatic stay arising under Bankruptcy Code section 362 to permit the Landlord to proceed with its landlord-tenant proceeding against the Debtor in the Southampton Town Justice Court (No. 16100044) and to recover possession of its real property at issue; or as otherwise authorized by the State Court or applicable law;

    (b) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and

(c) granting such other and different relief as the Court deems just and proper.

**PLEASE TAKE FURTHER NOTICE**, that objections, if any, to the relief requested in the Motion must (i) be made in writing; (ii) conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court; (iii) set forth the name of the objecting party and state with particularity the grounds for the objection; and (iv) be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which, together with the User's Manual for the Electronic Case Filing System, may be accessed at the Bankruptcy Court's official website at: www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system, and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), Microsoft Word, or any other Windows-based word processing format (with a hard copy delivered directly to the Chambers of the Honorable Alan S. Trust) and be served upon (a) Movant's counsel, Meltzer, Lippe, Goldstein & Breitstone, LLP, 190 Willis Avenue, Mineola, NY 11501, Attn:  Thomas J. McGowan, Esq.; (b) the Office of the United States Trustee for the Eastern District of New York, Long Island Federal Courthouse, 560 Federal Plaza, Room 560, Central Islip, NY 11722-4437, attn.: Alfred M. Dimino, Esq.; and (c) any persons who have filed a request for notice in the captioned  case pursuant to Bankruptcy Rule 2002, so as to be filed and received no later than **April 12, 2017 at 4:00 p.m.**

**PLEASE TAKE FURTHER NOTICE**, that the Hearing on the approval of the Motion may be adjourned from time to time without any other announcement other than that set forth in open Court.

Dated: Mineola, New York
       March 28, 2017

           **MELTZER, LIPPE, GOLDSTEIN**
           **& BREITSTONE, LLP**


         By: s/Thomas J. McGowan
            Thomas J. McGowan, Esq.
            190 Willis Avenue
            Mineola, New York 11501
            (516) 747-0300
            *Attorneys for Movant*
            *226 East Montauk Highway Corporation*

MELTZER, LIPPE, GOLDSTEIN
& BREITSTONE, LLP
190 Willis Avenue
Mineola, New York 11501
(516) 747-0300 (telephone)
Thomas J. McGowan, Esq.
*Attorneys for 226 East Montauk Highway Corporation*

Hearing Date:    April 19, 2017, 2:30 p.m.
Objections Due: April 12, 2017, 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
In re:                                                    :
                                                          :
       **TANJU NUREL,**                       :    **Chapter 11**
                                                          :
              Debtor.       :    **Case No.:  8-17-71200 (ast)**
                                                          :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MOTION FOR AN ORDER GRANTING RELIEF
## FROM THE AUTOMATIC STAY AND RELATED RELIEF

**TO:**    **THE HONORABLE ALAN S. TRUST**
        **UNITED STATES BANKRUPTCY JUDGE**

226 East Montauk Highway Corporation ("**Movant**" or "**Landlord**"), by its attorneys,

Meltzer, Lippe, Goldstein & Breitstone, LLP, seeks entry of an Order

(a) granting relief from and terminating the automatic stay arising under Bankruptcy
Code section 362 to permit the Landlord to proceed with its landlord-tenant proceeding against
the Debtor in the Southampton Town Justice Court (No. 16100044) and to recover possession of
its real property at issue; or as otherwise authorized by the State Court or applicable law;

(b) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and

(c) granting such other and different relief as the Court deems just and proper.

Together with the Affirmation of Thomas J. McGowan, Esq., in Support of the Motion

("**McGowan Aff.**"), with exhibits, the Landlord respectfully sets forth and represents the

following:

## PRELIMINARY STATEMENT

1.      This Chapter 11 case was filed in bad faith late on March 2, 2017 - the eve of the commencement of a trial in the Town of Southampton Justice Court (the "Landlord-Tenant Court") which was scheduled for 9:00 a.m. on March 3, 2017 - for the sole purpose of gaining the protection of the bankruptcy automatic stay with no possibility of the Debtor reorganizing given that his own petition evidences that he cannot even pay the Rent and Additional Rent due the Landlord under the lease at issue without taking into account any other debts he owes.

2.      The petition was filed so late on the eve of the commencement of the trial of the eviction proceeding being pursued by the Landlord in the Landlord-Tenant Court that the undersigned was unable to reach anyone still at the Landlord-Tenant Court to advise the Town Justice who was specifically coming in on an off day the next day only for the purpose of presiding over that eviction trial that the Debtor had filed for bankruptcy and thus the trial could not proceed.

3.      This case is a two party dispute between the Debtor and the Landlord; as evidenced by the Debtor's admissions in: (i) his Local Rule 1007-4 Affidavit when he states that "this bankruptcy was filed to stay the eviction" and states he is current on his home mortgage and (ii) his petition, which lists only five (5) unsecured creditors other than the Landlord whose debts, in the total sum of $46,101.04 (compared to the debt listed as being due the Landlord of $350,000 – it is actually more than that), are listed as being undisputed.

4.      This Chapter 11 case was only filed after: (i) five (5) prior unsuccessful motions were brought on behalf of the Debtor by Order to Show Cause and heard in State Court between the Landlord and the Debtor seeking to: enjoin the termination of the Debtor's 2011 lease; stay

2

landlord-tenant proceedings; consolidate landlord-tenant proceedings with the Debtor's Supreme Court action and/or dismiss proceedings commenced by the Landlord in the Landlord-Tenant Court; and (ii) the Debtor failed to post a **$200,000 bond** the State Court directed him to file in order to obtain a stay of the Landlord–Tenant Proceeding (with the State Court refusing to even sign his subsequent Order to Show Cause seeking to have the State Court eliminate or reduce the stay bond). This Chapter 11 case was also only filed after two motions to dismiss and/or stay, etc. filed by the Debtor in the Landlord-Tenant proceeding were denied by the Landlord-Tenant Court and less than a week after the Debtor's State Court counsel requested that the Landlord-Tenant Court issue a written order on his two motions (notwithstanding that the Landlord-Tenant Court had so-ordered the hearing transcript denying the motion) so the Debtor could seek a stay of the trial and dismissal of the Landlord's proceeding in that Court.

5.      The Landlord seeks relief from the automatic stay to permit the trial of the landlord-tenant proceeding in the Landlord-Tenant Court to go forward without further delay.

6.      The Landlord has been delayed from recovering its Premises in excess of ten months due to the dilatory tactics of the Debtor and his counsel. The Debtor has not paid the Landlord <u>any</u> rent since October **2015** yet has succeeded in delaying being evicted through his frivolous motion practice in State Court and Landlord-Tenant Court and, now, his bad faith filing of the instant bankruptcy petition; all the while continuing to operate a farmstand business from the Landlord's premises. Cause for stay relief is replete, including the Debtor's manifest bad faith.

7.      Even now the Debtor continues his bad faith in failing to pay the Landlord the **post-petition Rent and Additional Rent that was due on March 10, 2017 in the amount of**

**$$23,580.71** (which is comprised of Rent of $5,700.89 and Additional Rent of $17,879.82) as set forth in a notice sent to his bankruptcy counsel on March 3, 2017.

8.      The basis for stay relief is indisputable and the Landlord respectfully submits that relief should readily be granted.

## BASIS FOR RELIEF

9.      The Court has jurisdiction over this Motion pursuant to sections 157 and 1334 of title 28 of the United States Code ("Title 28").  Venue of this case and this Motion is proper pursuant to section 1408 and 1409 of Title 28.  This matter is a core proceeding pursuant to section 157(b)(2)(A), (G) of Title 28. The statutory predicates for the relief sought in this Motion are Bankruptcy Code sections 362(d) and 105 and Bankruptcy Rule 4001(a).

## BACKGROUND

### A.  The Debtor's Bad Faith State Court Tactics

10.      On or about May 6, 2016, the Debtor (and Nurel Farmstand, LLC - an entity which the Landlord learned does not exist) commenced an action by Summons with Notice and presented his **first** Order to Show Cause in the Supreme Court, Suffolk County, Index No. 4605/2016 asserting rights under the 2011 Lease between the Debtor and the Landlord. *See* Exhibits "1" (OSC), and "2" (Tanju Nurel Affidavit in Support with exhibits) to the McGowan Aff. The Debtor obtained a temporary restraining order ("TRO") from the State Court based upon the 2011 Lease even though the Debtor made no attempt to set forth or establish the elements required for the issuance of an injunction.

11.      On or about May 17, 2016, two days prior to the return date of Tenant's Order to Show Cause, Landlord mailed Tenant a Notice of Default with a thirty (30) day cure period

4

under the terms of the parties' May 11, 2011 lease (the "2011 Lease" or "Lease") demanding payment of past due rent and additional rent (the "Past Due Rent").

12.    On May 19, 2016, the return date of the Order to Show Cause, the matter was settled by So-Ordered Stipulation which, among other things, directed that the Debtor produce a copy of the insurance policy required by the Lease at issue within two weeks.

13.    The Debtor did not comply with the State Court's Order directing him to produce the required insurance policy.

14.    On or about June 17, 2016, Tenant commenced a second action in the Supreme Court, Suffolk County by Summons with Notice entitled *TANJU NUREL AND NUREL FARMSTAND, LLC v. 226 EAST MONTAUK HIGHWAY CORP.*, Index No. 6022/2016 (the "Supreme Court Action"). The Summons with Notice sought, among other relief, "An Order enjoining the termination of the Lease dated May 11, 2011". *See* Exhibit "32" annexed hereto (which incorrectly states that the Index No. is 4605/2016 but was in fact the Summons with Notice for this Supreme Court Action. The Debtor simultaneously presented his **second** Order to Show Cause with a TRO "for an Order enjoining the defendant from terminating plaintiff's tenancy [under the 2011 Lease] pending the outcome of this lawsuit…" without setting forth or attempting to establish the elements of a *Yellowstone* injunction[1] or a CPLR Article 63 injunction. The Supreme Court issued the TRO requested by the Debtor based on the 2011 Lease at issue over the Landlord's objection. *See* Exhibits "3" (OSC) and "4" (Nurel Aff.) to the McGowan Aff.

---

[1] As this Court may be aware, a tenant is not entitled to a *Yellowstone* injunction where, as here, the Landlord's Notice of Default seeks only past due rent.

15.    The Landlord submitted opposition to the Debtor's second Order to Show Cause, evidencing, *inter alia*, that: (i) the Debtor was in default of the 2011 Lease; (ii) the Debtor did not have the insurance required by the Lease; and (iii) the Debtor did not attempt to establish any of the elements necessary to obtain a mandatory injunction.

16.    The July 7, 2016 return date of the Debtor's second Order to Show Cause was adjourned to July 15, 2016 so that the Court could fully prepare for oral argument concerning whether to vacate the TRO. On July 15, 2016, the State Court vacated the TRO issued for the Debtor's benefit from the bench following oral argument and ultimately denied the Debtor's motion for a preliminary injunction. *See* Exhibit "5" to McGowan Aff.

17.    On July 19, 2016, the Debtor served its Verified Complaint (s*ee* Exhibit "6" to McGowan Aff.) as to which the Landlord's answered. *See* Exhibit "7" to McGowan Aff. As noted in the Debtor's Verified Complaint in the Supreme Court Action, he expressly seeks to enjoin the termination of the 2011 Lease between himself and the Landlord. *See* Exhibit "7" to McGowan Aff. at para.15.

18.    On or about July 20, 2016, the Landlord commenced a holdover proceeding against the Debtor in the Landlord-Tenant Court, No. 16-071506.

19.    On August 4, 2016, the Debtor presented his **_third_** Order to Show Cause with a TRO in State Court seeking an Order consolidating the holdover proceeding pending in the Landlord-Tenant Court with the Supreme Court Action and declaring that the Landlord's May 17, 2016 Notice of Default was legally insufficient. The Debtor's third Order to Show Cause with a TRO was signed over the Landlord's objection. The TRO stayed the landlord-tenant holdover proceeding in the Landlord-Tenant Court pending the August 25, 2016 return date of

the motion. *See* Exhibit "8", (August 4, 2016 OSC and Nurel Aff.). The Debtor's third OSC was once again based upon the 2011 Lease between himself and the Landlord.

20.     On August 17, 2016 the Landlord informed the Landlord-Tenant Court that it was withdrawing its holdover proceeding without prejudice[2]. Inexplicably, the Debtor's State Court counsel frivolously objected to the Landlord's withdrawal of its holdover proceeding (even though the Debtor had not appeared in that proceeding) notwithstanding that the Landlord had an absolute right under CPLR 3217 to unilaterally do so. The Debtor's State Court counsel's frivolous objection kick-started a drawn-out, expensive letter writing campaign wherein she made various misrepresentations[3] that confused the Landlord-Tenant Court into delaying the Court's recognition that the Landlord could and did withdraw its holdover petition under CPLR 3217 for well over a month.

21.     The Debtor also frivolously refused to withdraw his August 4, 2016 Order to Show Cause (i.e. his third OSC) which was mooted by the Landlord's withdrawal of its holdover proceeding and its May 17, 2016 Notice of Default. The State Court ultimately denied the Debtor's motion as moot. *See* Exhibit "9" to McGowan Aff.

22.     The Landlord duly served the Debtor with a bill for Past Due Rent dated August 25, 2016 and a three-day predicate notice pursuant to RPAPL § 711(2) dated September 13, 2016 (*see* Exhibit "10") and, when the Debtor failed to pay the rent that was due the Landlord as set forth therein, commenced a non-payment proceeding in Landlord-Tenant Court. *See* Exhibit

---

[2] The Landlord did so in contemplation of instead pursuing a non-payment proceeding in the Landlord-Tenant Court which should have limited the Debtor's ability to further delay the Landlord's recovery of a judgment and possession of its property.

[3] Counsel's misrepresentations included, but were not limited to, the deliberate misimpression it made to the Landlord-Tenant Court that the State Court had extended the TRO when it had not.

"11". (Notice of Verified Nonpayment Petition with Verified Petition). The nonpayment petition was returnable on October 7, 2016.

23.     On October 6, 2016, the day before the return date of the Landlord's non-payment petition in the Landlord-Tenant Court, the Debtor presented his **fourth** Order to Show Cause in the Supreme Court seeking an Order consolidating the nonpayment proceeding with the Supreme Court Action and dismissing the nonpayment proceeding and a Temporary Restraining Order staying the nonpayment proceeding. *See* Exhibit "12" to McGowan Aff. Once again, the Debtor made no attempt to set forth or satisfy the elements necessary for the issuance of an injunction.

24.     The Supreme Court granted the TRO subject to the Debtor posting a $200,000 bond within ten (10) days of that Order (to wit, by October 16, 2016). *See* Exhibit "12" to McGowan Aff.

25.     As a result of this TRO, the return date of the nonpayment proceeding in the Landlord-Tenant Court was adjourned from October 7, 2016 to October 21, 2016.

26.     The Debtor did not post the $200,000 bond required by the Supreme Court to protect the Landlord and, instead, filed a **fifth** Order to Show Cause on October 18, 2106 seeking an Order "reducing and/or vacating the undertaking as fixed by the Order of this Court, dated October 6, 2016 and for a further Order extending the stay of the" nonpayment proceeding *See* Exhibit "13" to McGowan Aff.

27.     The Supreme Court refused to even sign the Debtor's fifth OSC and it ultimately denied the fourth OSC by decision dated January 30, 2017. *See Id.* and Exhibit "14" to McGowan Aff. The Supreme Court noted in denying the Debtor's fourth OSC that **the Debtor's "submissions failed to establish that the Town Justice Court in which the summary proceeding is pending cannot afford the parties complete relief**". *See Id.* (emphasis added).

8

28.     **This Court should note that the Debtor never set forth or attempted to satisfy the well settled standard for the issuance of an injunction in any of his five Orders to Show Cause to State Court – evidencing the bad faith in which those motions were made by the Debtor in State Court**.

29.     On October 21, 2017, the Landlord-Tenant Court scheduled trial of the Landlord's nonpayment proceeding for November 18, 2016 (which had to be adjourned to December 5, 2016 when one of the Landlord's process servers could not appear for trial and the Debtor refused to stipulate to having been served with the nonpayment petition etc. after his counsel initially indicated that he would not contest service and notwithstanding that he has no basis to do so).

30.     On or about November 23, 2016, the Debtor filed a motion to dismiss the nonpayment proceeding in the Landlord-Tenant Court and/or to consolidate it with the Supreme Court action (notwithstanding that the Debtor's fourth OSC in the Supreme Court to consolidate the two matters was then pending) which automatically delayed trial of the landlord-tenant proceeding until the motion was decided by the Landlord-Tenant Court. *See* Exhibit "15" to McGowan Aff.

31.     The Debtor thereafter filed a second motion with the Landlord-Tenant Court on January 10, 2017 seeking to have the Debtor's untimely answer and jury demand deemed timely filed *nunc pro tunc*. *See* Exhibit "16" to McGowan Aff.

32.     The Landlord-Tenant Court denied both of the Debtor's motions on the record on January 20, 2107 and scheduled trial of the nonpayment proceeding for 9:00 a.m. on March 3, 2017 (with the Landlord-Tenant judge making it known that she was coming in on her off day just to preside over this trial to ensure that the matter was finally tried).

33.     Never one to let Court rulings get in her way of delaying the trial of the Landlord's claims against the Debtor as long as possible, the Debtor's State Court counsel waited over a month until one week before the scheduled trial to send a letter to the Landlord-Tenant Court on February 24, 2017 asking the Court to issue a written order on the Debtor's two motions so the Debtor could seek to have the landlord-tenant proceeding dismissed or to have the trial in Landlord-Tenant Court stayed pending appeal. She also requested that trial be adjourned so "appropriate papers can be drafted". *See* Exhibit "17" to McGowan Aff. The Landlord-Tenant Court declined the Debtor's requests and reminded the Debtor's counsel that the Court's decision had been spread upon the record at the January 20th appearance and, thus, the Debtor could order the hearing transcript and seek a stay based on that oral decision. *See* Exhibit "18" to McGowan Aff.

34.     At approximately 4:00 p.m. on March 2, 2017, the literal eve of trial in Landlord-Tenant Court, the undersigned received a call from the Debtor's bankruptcy counsel advising that the Debtor had filed a Chapter 11 petition a few moments before. Although we called the Landlord-Tenant Court to advise it of this latest delay of the trial of the Debtor's claims against the Debtor and avoid the Judge from being inconvenienced by coming in on her off day for a trial that was automatically stayed by the bankruptcy filing, no one answered our call and we instead faxed a letter to the Court advising it as to what had occurred.

**B.  The 2011 Lease At Issue**

35.     On May 11, 2011, the Debtor and the Landlord entered into a lease (the "Lease") pursuant to which the Debtor leased the premises owned by the Landlord located at 226 East Montauk Highway, Hampton Bays, New York (the "Premises"). *See* Exhibit "19" to the McGowan Aff.

36.     The Lease provides, among other things, that: Rent for the "2011 Summer/Fall season"  was to be paid by the Debtor in the amount of $36,000" (s*ee Id*. at Section 34.2); Rent for the remainder of the first year was to be paid by the Debtor at the rate of $4,800 per month (s*ee Id*. at Section 3.10); Rent increases by 3½ percent each year (s*ee Id*. at Section 3.2); and the Debtor was to pay "additional rent" to cover expenses for water, sewer, real estate taxes, license and permit fees and insurance. *See Id*. at Articles 3.5, 6.1, 6.2 and 34.2(d).

37.     The Lease requires the Debtor to pay Rent and Additional Rent promptly when due, without demand, no later than the tenth day of each month or incur a 10% late charge. *See Id*. at Articles 3.4, 3.5.

38.     The Lease also requires that: (i) the Debtor "maintain for the mutual benefit of [the Landlord] and [the Debtor] comprehensive general public liability insurance, including, without limitation, coverage for liability against claims for personal injuries, death or property damage occurring in, on or about the Premises and any adjoining sidewalk or curb . . . with minimum limits of $1,000,000 for personal injury or death to any one person and $2,000,000 in respect of any one occurrence and $1,000,000 for property damage"; (ii) originals of such policies shall be provided to the Landlord and (iii) the insurance policies were to name the Landlord and the Debtor as the insureds "as their respective interests may appear". *See Id*. at Article 20.

39.     The Lease also: contains a merger clause (Article 28); excludes waivers by the Landlord (Article 17); bars oral modifications (Article 33); bars assignments of the Lease without the Landlord's "prior written consent" (Article 32); and provides that the Debtor bears sole responsibility for the cost of any alterations to the Premises (Articles 7, 12). *See Id*.

40.     On August 24, 2016, the Landlord sent the Debtor a bill for rent, real estate taxes, water, insurance, license and permit fees and late fees (the "Bill"). *See* Exhibit "20" to McGowan Aff. The Bill attached supporting documentation for all additional rents demanded, including evidence of real estate taxes (Ex. "B" to the Bill), evidence of water bills (Ex. "C" thereto), evidence of insurance bills (Ex. "D" thereto) and evidence of license and permit fees (Ex. "E" thereto).

41.     The Debtor, however, failed to remit payment of the balance due in the Bill. Due to the Debtor's failure to timely (or otherwise) remit payment of the Additional Rent demanded in the Bill, the Debtor was charged a 10% late fee on all Additional Rent demanded therein. *See* Exhibit "19" to the McGowan Aff. at Sections 3.4, 3.5.

42.     On September 13, 2016, the Landlord deemed Debtor in default of the Lease and served a Rent Demand pursuant to Real Property Actions and Proceedings Law § 711 that demanded that the Debtor surrender the leased Premises or make payment of $360,676.46 on or before the expiration of the three (3) day period after service of said Rent Demand. *See* Exhibit "21" to McGowan Aff. (the "Rent Demand").

43.     The Debtor did not remit payment of $360,676.46 or surrender the leased Premises within the timeframe set forth in the Rent Demand.

44.     The Landlord thus commenced its nonpayment proceeding in the Landlord-Tenant Court. *See* Exhibit "11" to McGowan Aff.

## C.  **The Debtor's Bankruptcy Petition and Other Filings Evidence Bad Faith**

45.     The Debtor's Chapter 11 petition evidences that:

    (i)      the Debtor is current on his home mortgage;

    (ii)     the Debtor only has five (5) unsecured creditors other than the Landlord;

(iii)    the Debtor only disputes the debt due the Landlord;

(iv)    the debt listed as due the Landlord (which is understated at $350,000) dwarfs the entire undisputed debt alleged to be due all the other unsecured creditors (i.e. $46,101.04);

(v)    the Debtor has had income of approximately $36,000 per year for the past three years (while his rent and additional rent obligations under the 2011 Lease at issue alone exceed $90,000 per year);

(vi)    the Debtor estimated his current monthly income as being $1,733.33 and monthly expense as being $4,939 (which did not include the payments due under the commercial lease at issue); and

(vii)    the Debtor borrowed $10,000 from an individual listed as one of the five undisputed unsecured creditors since January 1, 2017 (likely as part of the funds used by the Debtor to pay his $20,000 retainer to his bankruptcy counsel).

*See* Exhibit "22" to McGowan Aff.

46.    The Debtor's Local Rule 1007-4 Affidavit admits that "[t]he eviction proceeding was scheduled for March 3, 2017 and this bankruptcy was filed to stay the eviction in order to proceed with the debtor claimed offsets to any past due rent"; thus evidencing that this is a two party dispute, and admits that the Debtor is current on his home mortgage. *See* Exhibit "23" to McGowan Aff.

47.    The Debtor's Affidavit of Income filed with this Court admits that the Debtor was "currently not receiving paystubs" and was "receiving no other income at this time", i.e. as of the

13

date of the filing of his bankruptcy petition herein. A true copy of the Debtor's Affidavit of Income is annexed hereto as Exhibit "33".

**D.**    **The Debtor's Failure To Pay Post-Petition Rent and Additional Rent**

48.    The Debtor's counsel was emailed written notice on March 3, 2017 that Rent and Additional Rent was due from the Debtor under the terms of the 2011 Lease at issue on March 10, 2017 in the amount of $23,580.71 (which was comprised of Rent in the amount of $5,700.89 and Additional Rent of $17,879.82). *See* Exhibit "24" to McGowan Aff.  Included in the notice was the supporting documentation for each of the items comprising the Additional Rent due under the terms of the 2011 Lease at issue. *See Id.*

49.    On March 6, 2017, the Debtor's counsel represented that payment would be made by the Debtor by March 10th. *See* Exhibit "25" to McGowan Aff.

50.    No payment was made by the Debtor by March 10th and, thus, under the plain terms of the 2011 Lease at issue, a ten (10%) late charge of $2,358 is added to the Rent and Additional Rent due the Landlord on March 19th. *See* Exhibit "19" to McGowan Aff. at Articles 3.4, 3.5.

51.    On March 15th, five days <u>after</u> the Rent and Additional Rent was due the Landlord under the terms of the Lease, the Debtor's bankruptcy counsel (i.e. Cooper Macco, Esq.) inquired as to how the base Rent in the amount of $5,700.89 was ascertained. *See* Exhibit "26" to McGowan Aff. Counsel was referred to Article 3 of the 2011 Lease which provides for a 3 ½ % increase in the base Rent each year. *See* Exhibit "27" to McGowan Aff. The Court will note that counsel did not dispute or challenge any of the items of Additional Rent as to which he had been given the supporting documentation on March 3rd. *Compare* Exhibit "24" to Exhibit "26" of the McGowan Aff.

52.     Notwithstanding his admission that he had reviewed the 2011 Lease at issue (*see* Exhibit "26" to McGowan Aff.), and that the Debtor had provided him with signed copies of various agreements (*see* Exhibit "34" to McGowan Aff.), counsel (i.e. Cooper Macco, Esq.) frivolously complained in a letter dated and emailed on March 21, 2017 that the undersigned had not provided him with a copy of the signed lease at issue and incredibly contended in bad faith that he could not figure out what amount was due the Landlord. *See* Exhibit "28" to McGowan Aff. Counsel also attached copies of one check dated March 21, 2017 in the amount of $4,800 for "March 2017 base rent" and a second, **post-dated**, check in the amount of $4,800 for "April 2017 base rent" that the Debtor apparently was sending. *See Id.* Although the March 21, 2017 letter stated that it was being sent by overnight mail, the letter was not actually put into overnight mail until the following day and not delivered to the undersigned until March 23, 2017. *See Id.*

53.     When TD Bank, upon which the two checks are drawn, was called on March 22, 2017 by this Firm as to whether there were sufficient funds in the bank to cover the $4,800 check dated March 21, 2017 to the Landlord, it advised that **there were insufficient funds in the account to cover that check**. Hence, the Debtor (with or without his counsel's knowledge is not known at this point) attempted to commit a fraud upon the Landlord who would have been damaged by a bounced check charge if he had actually presented the rubber check that the Debtor had sent.

54.     The bogus, bad faith checks were thus rejected by the Landlord. *See* Exhibit "29" to McGowan Aff.

### E.  The Debtor's Post-Petition Failure To Provide Required Insurance Policy

55.     As noted above, the Lease at issue between the Debtor and the Landlord requires him to provide an insurance policy to the Landlord which, among other things, names both him

and the Landlord as insureds and contain specific types of coverage in specific amounts. *See* Exhibit "19" to McGowan Aff. at Article 20.

56.    Instead of providing such a policy, which the State Court had previously ordered the Debtor to produce but he did not (*see* Exhibit "30" to McGowan Aff.), the Debtor's counsel delivered an insurance policy by email on March 21, 2017 which:

(i)    does <u>not</u> name the Debtor as an insured notwithstanding that the Lease at issue is between the Debtor individually and the Landlord (*see* Exhibit "19" to McGowan Aff.)(*See* Exhibit "31" to McGowan Aff. at p. 1, "Policy Declarations");

(ii)    names an entity, "TAM-NY INC." as the insured (*see Id.*), which has no tenancy or any other interest in the Premises at issue (and could not since the Lease at issue contains a no assignment clause without the Landlord's "prior written consent" which was never sought from or given by the Landlord – (*see* Exhibit "19" to McGowan Aff. at Article 32);

(iii)    contains the misclassification of the Premises being used by the Debtor as a "Flea Market, Fair, or Show Vendor – primary event location" when the Debtor is currently actually operating out of a building that cost the Landlord in excess of $1.7 Million to construct (*see* Exhibit "31" to McGowan Aff. at "Commercial General Liability Coverage Part Declarations") while the insurance policy expressly provides under its "Classification Limitation Endorsement" that "Coverage under this contract is strictly limited to the classification(s) and code(s) listed on the policy Declarations page" (s*ee Id.*) – thus providing no actual coverage for the Premises being used by the Debtor, even if he had been named as an insured, which he was not;

(iv)    does <u>not</u> name the Landlord as an insured under the policy (*see Id*.); and

(v)    does not provide the $1 Million in property damage required by the Lease at issue. *See Id*. at p. 1, "Policy Declarations".

**ARGUMENT**

**I.    THE AUTOMATIC STAY SHOULD BE TERMINATED FOR CAUSE, BECAUSE THE LANDLORD LACKS ADEQUATE PROTECTION AND BECAUSE THE DEBTOR IS NOT FULFILLING HIS 11 U.S.C. § 365(d)(3) OBLIGATIONS TO THE LANDLORD**

57.    Under Bankruptcy Code § 362(d)(2), the Court must provide relief from the Section 362 automatic stay to a party in interest such as the Landlord "for cause, including a lack of adequate protection". 11 U.S.C. § 362(d)(2).

58.    Although "cause" is not defined in the Bankruptcy Code or its legislative history, it is well settled that "[a] bankruptcy filing made in bad faith can constitute 'cause' and justify terminating the automatic stay." *In re Muniz*, 1999 WL 182588 (S.D.N.Y. 1999); *accord In re 68 West 127 Street, LLC*, 285 B.R. 838 (Bankr. S.D.N.Y. 2002)("Although not expressly stated in Section 362(d)(1), it is well established that a debtor's bad faith constitutes 'cause' for relief from the automatic stay"); *In re Kornhauser*, 184 B.R. 425 (Bankr. S.D.N.Y. 1995)(same); *Manhattan King David Restaurant Inc. v. Levine*, 163 B.R. 36 (S.D.N.Y. 1993)(same).

59.    In determining whether a debtor has acted in bad faith, it has been held that, "[w]hile no single fact is dispositive, courts have found the following factors meaningful in evaluating an organizational debtor's good faith: (1) the debtor has one asset; (2) the pre-petition conduct of the debtor has been improper; (3) there are only a few unsecured creditors; (4) the debtor's property has been posted for foreclosure, and the debtor has been unsuccessful in defending against the foreclosure in state court; (5) the debtor and one creditor have proceeded to

17

a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford; (6) the filing of the petition effectively allows the debtor to evade court orders; (7) the debtor has no ongoing business or employees; and (8) the lack of possibility of reorganization. (cites omitted)". *In re Laguna Associates Ltd. Partnership*, 30 F.3d 734 (6th Cir. 1994).

60.     In the *Manhattan King* case cited above, Judge Preska noted that "[b]ad faith under Section 362 is often found upon a showing that a single asset debtor or a non-going concern filed with the intent to gain relief from a state court action" and cited to *In re Little Creek Development*, 779 F.2d 1068, 1072 (5th Cir. 1986) for the propositions "that a typical bad faith filing situation is where 'the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford'" and that "resort to the protection of the bankruptcy laws is improper where, *inter alia,* there is no hope of rehabilitation." *Manhattan King David Restaurant Inc. v. Levine, supra,* 163 B.R. at 40.

61.     Noting that the debtor had failed to pay rent for nine months pre-petition and had not paid any post-petition rent and related charges, Judge Preska affirmed the lifting of the automatic stay by the Bankruptcy Court. *See Id*.

62.     The Second Circuit applied the factors identified by the Court in *Pleasant Pointe Apartments Ltd. v. Kentucky Hous. Corp.*, 139 B.R. 828 (W.D.Ky. 1992) as indicative of bad faith in the context of the dismissal of a bankruptcy filing, to wit: "(1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party

18

dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees", to uphold the dismissal of a bankruptcy filing for bad faith. *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997).

63.     The lifting of the automatic stay has also been upheld where the debtor engaged in dilatory tactics in State Court in order to "frustrat[e] and delay[] the plaintiff's attempts to evict it." *In re: GSVC Restaurant Corp.* 10 B.R. 300, 302 (S.D.N.Y. 1980).

64.     Here, the Debtor's bad faith filing of his Chapter 11 petition is manifest.

65.     As noted above, the Debtor is only fighting about one asset – its leasehold in the Landlord's premises as to which it has not paid any rent since October **2015**; the debtor has engaged in extensive dilatory tactics in State Court and the Landlord-Tenant Court to frustrate and delay the Landlord's efforts to evict it from the Premises and to collect the past due Rent and Additional Rent due it; there are only five unsecured creditors besides the Landlord - whose claim dwarfs the total amount due the other unsecured creditors; the bankruptcy filing only happened after five prior Orders to Show Cause were filed in State Court seeking to prevent the Landlord from terminating the 2011 Lease at issue and evicting the Debtor, etc. were denied by the State Court; the Debtor could not post the **$200,000 bond** that the State Court directed him to post in order to stay the Landlord-Tenant Proceeding; the bankruptcy filing was made on the eve of the eviction trial that was scheduled to commence at 9:00 a.m. the next morning (i.e. March 3, 2017); the Debtor's Local Rule 1007-4 Affidavit contains his admission that "[t]he eviction

proceeding was scheduled for March 3, 2017 and this bankruptcy was filed to stay the eviction"; the Debtor's Local Rule 1007-4 Affidavit and his bankruptcy petition evidence that he has annual income for the past three years is approximately one third of the amount that is due the Landlord annually under the Lease at issue (while his Affidavit of Income admits that he was "currently not receiving paystubs" and was "receiving no other income at this time", thus, there is no possibility that the Debtor can succeed with reorganization under Chapter 11 since he cannot meet just the Lease expense owed to the Landlord on a monthly basis, to say nothing of any other expenses in his life; and this is nothing more than a two party dispute which could have easily and quickly been resolved had the trial proceeded on March 3rd in the Landlord-Tenant Court.

66.     In sum, the automatic stay should be vacated to allow the Landlord to proceed with its eviction proceeding in Landlord-Tenant Court on the ground that the Debtor's bad faith filing constitutes cause for doing so.

67.     The automatic stay should also be vacated since there is no adequate protection for the Landlord.

68.     To explain, the Landlord expended in excess of $1.7 Million to construct the building that the Debtor is operating out of at the Premises, yet, despite a State Court order for him to do so, the Debtor has **never** produced an insurance policy naming himself and the Landlord as insureds with the terms and in the amounts required by the Lease and, in fact, appears to have made intentional misrepresentations to the insurer that he is a vendor at a flea market, fair or show in order to get a lower insurance premium on the policy issued to insure "TAM-NY" which has no interest in the Premises (and while the policy excludes coverage for anything outside of that classification as a vendor in a flea market, etc.).

20

69.     The State Court also previously determined that the Debtor should post a $200,000 bond to protect the Landlord if there was to be a stay of the eviction proceeding pending in the Landlord-Tenant Court. The Debtor did not post that bond due to his financial condition and seeks to abuse the automatic stay accorded him under the Bankruptcy Code as a cheap alternative to obtaining a stay without having to post a $200,000 bond to protect the Landlord.

70.     The Debtor has also failed to pay post-petition Rent and Additional Rent and then, while playing games pretending he does not understand the amount due for base Rent (while not contending that he does not understand the items constituting the Additional Rent) sends an untimely rent check to the undersigned (in an amount for base Rent he unilaterally decided was the amount due while ignoring the Rent escalation clause in the Lease) that would have bounced for insufficient funds if the Landlord had actually tried to cash that check.

71.     Hence, the automatic stay should be vacated on these grounds as well.

## **CONCLUSION**

72.     The Landlord respectfully requests that the Court enter an Order:

(a) granting relief from and terminating the automatic stay arising under Bankruptcy Code section 362 to permit the Landlord to proceed with its landlord-tenant proceeding against the Debtor in the Southampton Town Justice Court (No. 16100044) and to recover possession of its real property at issue; or as otherwise authorized by the State Court or applicable law;

(b) waiving the 14-day stay imposed by Bankruptcy Rule 4001(a)(3); and

(c) granting such other and different relief as the Court deems just and proper.

21

73.     No prior application for the relief sought herein has been made to this or any other

Court.

Dated:  Mineola, New York
        March 28, 2017

                              MELTZER, LIPPE, GOLDSTEIN
                              & BREITSTONE, LLP

                        By:   */s/ Thomas J. McGowan*
                              Thomas J. McGowan, Esq.
                              190 Willis Avenue
                              Mineola, New York 11501
                              (516) 747-0300
                              *Attorneys for the Landlord*
                              *226 East Montauk Highway Corporation*