**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

    **TANJU NUREL,**

                      Debtor.

: Chapter 11
:
: Case No.: 8-17-71200 (ast)
:
: **REPLY**
: **AFFIDAVIT**
: **OF NON-COMPLIANCE**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :x

STATE OF NEW YORK   )
                              ) ss.:
COUNTY OF NASSAU    )

       THOMAS J. MCGOWAN, being duly sworn, deposes and says:

       1.       I am a member of Meltzer, Lippe, Goldstein & Breitstone, LLP, attorneys for 226 East Montauk Highway Corporation (the "Landlord"). I make the following statements in reply to some of the more frivolous assertions set forth in the Affidavit in Opposition to the Affidavit of Non-Compliance filed by the undersigned (respectively, the "Macco Aff." and the "Non-Compliance Aff.").

       2.       It is irrefutable that the Debtor failed to timely (or otherwise) produce an insurance policy "complying with all of the terms of the lease between the Debtor and the Landlord dated May 11, 2011" as he was directed to do by the Lift Stay Order "on or before April 28, 2017" or this Court would vacate the automatic stay in its entirety "without a hearing". *See* Ex. "A" to the Non-Compliance Aff.

       3.       Indeed, the Court will note first that no evidence is attached to the Macco Aff. supporting his *ipse dixit* contention that the Debtor fully and timely complied with the Lift Stay Order as that Order expressly direct him to do if he wanted to controvert the Affidavit of Non-Compliance filed by the undersigned since no such evidence exists.

       4.       The Debtor's most frivolous contention – that the Landlord "waived" the Debtor's obligation to timely procure and produce a Lease-compliant insurance policy issued by an insurer insurer that is "licensed to do business in the State of New York, [and is] acceptable to [the Landlord]" – is abjectly frivolous and barred by the Lease. *See* Ex. "B" to the Non-Compliance Aff.

1

Aff. Section 17.1 of the Lease sets forth an unambiguous no-waiver provision that provides that "[t]he failure of [Landlord] to insist upon the strict performance of any of the terms, covenants and and conditions of this Lease, or to exercise any right or remedy herein contained, shall not be construed as a waiver or relinquishment for the future enforcement of such term, covenant or condition." *Id.* Such a no-waiver provision "reserves the landlord's rights and remedies even if there is a failure to insist upon strict performance of any terms." *Dennis & Jimmy's Food Corp. v. v. Milton Co.*, 99 A.D.2d 477 (2d Dep't 1984), *aff'd*, 62 N.Y.2d 613 (1984) *see also Excel Graphics Tech., Inc. v. CFG/AGSCB 75 Ninth Ave., L.L.C.*, 1 A.D.3d 65, 70 (1st Dep't 2003) ("the ("the parties to a commercial lease may mutually agree that conduct, which might otherwise give give rise to an inference of waiver, shall not be deemed a waiver of specific bargained for provisions of a lease").

5. Moreover, the Debtor admits that the Landlord rejected the noncompliant insurance policies proffered by the Debtor. *See* Macco Affidavit at ¶ 4. How the Debtor can contend that these rejections are a "waiver" is both unexplained by the Debtor and is inexplicable. The Landlord received the latest noncompliant insurance policy by email from the Debtor's counsel at 4:24 p.m. on April 26, 2017 and rejected same by return email to the Debtor's counsel at 9:51 a.m. the following day which included the ground that the insurer was not licensed in New York as the Lease required. *See* Exs. "C" and "D" to the Non-Compliance Aff.

6. Thus, it is axiomatic that the Landlord did not waive any of the Lease requirements and the Debtor's waiver argument is patently frivolous.

7. The Debtor also falsely contends that he secured coverage of $1,000,000 for property damage before April 28, 2017. The Debtor secured two policies, the first limited property damage coverage to $100,000, insured a "Flea Market, Fair or Show Vendor" and expressly excluded coverage for property that the Debtor rents or occupies (*i.e.*, the entire leased premises). This policy, which Landlord previously rejected, was essentially worthless.

8. The Landlord also rejected the Debtor's second policy produced on April 26th as noncompliant since it was written by insurer that is unlicensed in New York, had a $600,000 coverage limit for property damage to building only, and expressly excluded property damage to to the "foundations of the building", the "land on which the property is located" and "underground


"underground pipes" despite the Lease's requirement that the Debtor maintain coverage "without "without limitation" for "property damage occurring in, on or about the Premises and any adjoining adjoining sidewalk or curb." *See* Ex. "C" to the Non-Compliance Aff. Hence, the Debtor's second second policy is noncompliant.

9. Moreover, the leased premises are additionally not adequately protected because the second noncompliant policy requires an 80% coinsurance payment. *See Id.* at Building and Personal Property Coverage Form, Section F (1)(a) ("Additional Conditions") which provides that the unlicensed insurer **"will not pay the full amount of any loss** if the value of the Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property."(emphasis added). Thus, here, if the new building that the Landlord built for $1,700,000 suffered $1,000,000 in **covered** property damage (assuming the policy produced on April 26th actually provided that amount of coverage when it did not) the insurer would **not** cover the entire loss, but would instead cover just $734,300 because of the 80% "underinsurance" penalty set forth in that policy (i.e. an underinsurance penalty is applied where, as here, the property is worth more than the property damage coverage amount set forth in the policy).*See Id.*

10. Based on the foregoing, the Debtor has not controverted the Affidavit of Non-Compliance and evidence attached thereto and an Order vacating the automatic stay must be issued without hearing as provided for in the Lift Stay Order.

_____
THOMAS J. MCGOWAN

Sworn to before me on the
3rd day of May, 2017

_____
NOTARY PUBLIC

VERONICA DeVITO
Notary Public, State of New York
No. 4777066
Qualified in Nassau County
Commission Expires Jan. 31, 1/9